# No. 19-50628

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee,

**v.**

**BRAXTON HUDGENS,**
Defendants-Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, MIDLAND DIVISION,
DISTRICT COURT NO. 7:19-CR-00004-1

_____

**APPELLANT'S
BRIEF ON THE MERITS**

_____

**Shane Stolarczyk
KELLER STOLARCZYK, PLLC
234 W. Bandera Rd., No. 120
Boerne, Texas 78006
Tele: 830.981.5000**

## CERTIFICATE OF INTERESTED PERSONS

UNITED STATES OF AMERICA,
              Plaintiff-Appellee,

v.                                                    No. 19-50628

BRAXTON HUDGENS,
              Defendant-Appellant.

        The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

        1.  United States of America

| Trial Counsel | Appellate Counsel |
| --- | --- |
| James Harwood<br>U.S. Attorney's Office<br>400 W. Illinois, Ste. 1200<br>Midland, TX 79701 | Joseph Gay<br>U.S. Attorney's Office<br>601 N. W. Loop 410, #1200<br>San Antonio, TX 78216 |

        2. Braxton Hudgens

| Trial Counsel | Appellate Counsel |
| --- | --- |
| David Rogers<br>Fivecoat & Rogers PLLC<br>214 W. Texas Ave., Ste. 811<br>Midland, TX 79702 | Shane Stolarczyk<br>Keller Stolarczyk PLLC<br>234 W. Bandera Road, # 120<br>Boerne, Texas 78006 |

3. The Honorable Ronald C. Griffin, United States District Judge

4. The Honorable David Counts, United States District Judge

_**/s/ Shane Stolarczyk**_
Shane Stolarczyk

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes oral argument will not substantially assist the Court in determining the disposition of the issues presented. Accordingly, oral argument is not requested in this matter.

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTERESTED PERSONS ........................ 2

STATEMENT REGARDING ORAL ARGUMENT ................... 4

TABLE OF CONTENTS ...................................................... 5

TABLE OF CITATIONS ...................................................... 7

STATEMENT OF JURISDICTION ......................................10

STATEMENT OF THE ISSUES...........................................11

       THE DISTRICT COURT IMPOSED AN
       UNREASONABLE UPWARD DEPARTURE
       SENTENCE UPON APPELLANT.

STATEMENT OF THE CASE ...............................................12

SUMMARY OF THE ARGUMENT ......................................29

ARGUMENT ...................................................................30

       THE DISTRICT COURT IMPOSED AN
       UNREASONABLE UPWARD DEPARTURE SENTENCE
       UPON APPELLANT.

      A.   The relevant standards of review
          and applicable law ................................... 30

            1.   This Court's review is for harmless error
                 ..................................................... 30

            2.   Substantive reasonableness............. 31

B.   *United States v. Burrage* precluded the prosecution from charging Appellant under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) of sentence ............................................. 34

C.   The District Court abused its discretion in its decision to depart upwardly and as to the extent of its departure ............................. 39

    1.   <u>The lower court made an improper end-around *Burrage*</u> ............................... 40

    2.   <u>The degree of the lower court's departure is unjustified</u> ................... 44

CONCLUSION ...................................................................48

CERTIFICATE OF SERVICE ...............................................49

CERTIFICATE OF COMPLIANCE .......................................50

# TABLE OF CITATIONS

Page

**U.S. SUPREME COURT CASES**

*Bordenkircher v. Hayes,*
    434 U.S. 357 (1978).......................................................42

*Ex parte Milligan,*
    71 U.S. 2 (1866)............................................................43

*Gall v. United States,*
    552 U.S. 38 (2007).......................................................33

*United States v. Burrage,*
    571 U.S. 204 (2014)................................................. 34-39

*United States v. Payner,*
    447 U.S. 727 (1980).....................................................43

**CIRCUIT COURTS OF APPEALS**

*Lundy v. Adamar of New Jersey, Inc.*
    34 F.3d 1173 (3d Cir. 1994)..........................................47

*United States v. Akpan,*
    407 F.3d 360 (5th Cir. 2005)........................................31

*United States v. Desselle,*
    450 F.3d 179 (5th Cir. 2006)........................................47

*United States v. Fernandez,*
    770 F.3d 340 (5th Cir. 2014)........................................34

*United States v. Harris,*
    293 F.3d 863 (5th Cir. 2002)........................................46

*United States v. Pineiro,*
   410 F.3d 282 (5th Cir. 2005)...........................................31

*United States v. Rajwani,*
   476 F.3d 243 (5th Cir. 2007)....................................34,45

*United States v. Sanchez-Ramirez,*
   497 F.3d 531 (5th Cir. 2007)..........................................39

*United States v. Saldana,*
   427 F.3d 298 (5th Cir. 2005)..........................................33

*United States v. Smith,*
   417 F.3d 483 (5th Cir. 2005)..........................................31

*United States v. Velez–Alderete,*
   569 F.3d 541 (5th Cir. 2009)..........................................34

*United States v. Walters,*
   418 F.3d 461 (5th Cir. 2005)..........................................30

*United States v. Williams,*
   517 F.3d 801 (5th Cir. 2008)..........................................33

## RULES, STATUTES, & OTHER AUTHORITY

18 U.S.C. § 841......................................................................41

18 U.S.C. § 3553............................................................. 32-34

FED. R. CRIM. P. 4 ...............................................................10

FED. R. CRIM. P. 52 .............................................................31

Centers for Disease Control and Prevention, 2018 Annual
Surveillance Report of Drug-Related Risks and Outcomes (2018)
   .......................................................................................44

8

Charles Doyle, *Mandatory Minimum Sentencing of Federal Drug Offenses in Short*, at 4, (January 11, 2018) ...........................44

*W. Page Keeton et al.*, Prosser and Keeton on the Law of Torts § 56, at 375 (5th ed. 1984).......................................................47

## **STATEMENT OF JURISDICTION**

Jurisdiction of this Court is invoked under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), as an appeal from a final amended judgment of conviction and sentence entered in the United States District Court for the Western District of Texas (Midland Division) on July 17, 2019.[1] Notice of appeal was timely filed in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure. ROA.47. (showing defendant-appellant's notice of appeal was prematurely filed on July 9, 2019); *see* FED. R. APP. P. 4(b)(2) ("A notice of appeal filed after the court announces a decision, sentence, or order —but before the entry of the judgment or order — is treated as filed on the date of and after the entry."); FED. R. APP. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal.").

---

[1] ROA.56. The record is cited as follows: Official Record "ROA.[page #]."

## <u>STATEMENT OF THE ISSUE</u>

ISSUE ONE:    THE    DISTRICT    COURT    IMPOSED    AN
UNREASONABLE    UPWARD    DEPARTURE
SENTENCE UPON APPELLANT.

## STATEMENT OF THE CASE

### *The Offense*

On November 3, 2018, law enforcement officers from the Odessa Police Department and personnel from the Odessa Fire Department responded to a 911 emergency call for a possible drug overdose at a residence located in an upper income community in Odessa, Texas. ROA.79, 188. Upon their arrival, they discovered an unconscious female victim, who was not breathing. ROA.188. Information developed at the scene indicated the victim had voluntarily ingested heroin prior to her medical episode. ROA.79, 188. Medical personnel transported the victim to a local hospital, where medical staff later pronounced the victim dead. ROA.79, 188.

Law enforcement officers spoke with a witness to the events. ROA.79, 188. They learned the victim had obtained the narcotics she ingested from a friend, the defendant-appellant

Braxton Hudgens.[2] Although the victim had not used heroin for several months, she ingested the heroin upon seeing it. ROA.188. The victim became heavily intoxicated and began complaining about its effects. ROA.79, 188. The witness became concerned for the victim after she became extremely lethargic and her lips turned purple. ROA.188. Hudgens supposedly advised the witness not to call 911 because he had his two-year-old son present and "did not want to get into trouble." ROA.188. Instead, Hudgens contacted a friend, Corey Bostic, for assistance. ROA.84, 188-89. Hudgens messaged Bostic: "U please"; "I need speed"; "Please"; "For falling out"; "Girl Fallon out"; "I need a 20"; "Please Bro." ROA.84, 189.

Hudgen's friend responded to Hudgen's request for help by bringing a quantity of methamphetamine to the victim's residence. ROA.79, 188. Hoping to reverse the effects of the

---

[2] ROA.93, 188. Hudgens was supposedly in the drug trade for several years before the night of the victim's death. He typically secured "between a quarter and a half an ounce of heroin" from his drug supplier each week. ROA.87-91, 190, 193. He also distributed a small quantity of a methamphetamine during this period as well. ROA.193. Hudgens is accused of being criminally accountable for at least 1.84 kilograms of heroin and a quantity of methamphetamine during his narcotics related activities. ROA.193.

heroin the victim had just ingested, Hudgens injected the methamphetamine into the victim's nasal cavity with a hypodermic syringe. ROA.79-80, 188. The victim then went to sleep with the witness on her bed, while Hudgens and his son slept on the floor. ROA.188. Approximately four hours later, however, the witness woke up to use the restroom and attempted to wake victim without success. ROA.188-89. The witness called 911 for emergency assistance.[3] When first responders arrived at the scene, they observed Hudgens performing chest compressions on the victim, but it was too late to save the victim. ROA.188-89.

Hudgens admitted to officers that he had previously dated the victim and knew she had undergone open heart surgery in the past. ROA.189. Hudgens reported to the  officers that the victim asked to use heroin and snorted "a little 20" of heroin (0.07 to 0.1 grams). ROA.189. During further questioning, Hudgens admitted he injected the victim with

---

[3] ROA.188-89. When the witness told Hudgens she intended to call 911, Hudgens removed narcotics and drug paraphernalia from the victim's dresser to conceal the items from law enforcement officers. ROA.188-89.

methamphetamine via a hypodermic syringe that he placed into her nasal cavity. ROA.189. Hudgens stated he did this in an attempt to reverse the effects of the heroin the victim had injected. ROA.189.

A review of Hudgens' cell phone revealed two recorded videos related to the victim's overdose. ROA.189. The first video, recorded at 1:58 a.m. ion November 3, 2018 in the victim's bedroom, shows the victim intoxicated with very slow and lethargic movements. ROA.189. During the 55 second video, Hudgens filmed Fulton as she attempted to maintain her balance while sitting on the bed. ROA.189. Hudgens is heard saying: "Look at her go. Thought she could handle shit, nigga. Miss big bad wolf, look at her go. She can't handle shit, nigga." ROA.189. Hudgens also appears on the video using a bath towel to flip the victim on the face and stating: "Get your ugly ass up"; "Wake up, bitch"; and "Stupid." ROA.189. Due to her level of intoxication, the victim had no reaction to Hudgens's comments or actions. ROA.189.

In a second video, recorded at 8:36 a.m. on November 3, 2018, the victim is seen lying face up on a bed. ROA.189. The victim has a white foam like substance discharging from her nostrils and appears to take gasping breaths. ROA.189. Fluid is heard from her lungs or throat as she inhales. ROA.189. Hudgens appears in the video wiping the foam like substance away from the victim's nose with a tissue. ROA.190.

Law enforcement officers interviewed Bostic following the victim's death. ROA.84-85. Bostic confirmed Hudgens had contacted him to assist with a "girl who was overdosing." ROA.85. When Bostic arrived at the residence, he observed a female who appeared to be suffering from an opioid overdose. ROA.85. Hudgens stated to Bostic that the victim had "gotten into his stash" without his permission. ROA.85.

Bostic, who himself had suffered a heroin overdose and observed others suffer overdoses, stated that he was "50-50" about calling an ambulance based on his observations. ROA.85, 192. Bostic recalls seeing Hudgens slap the victim in an attempt to wake her. ROA.85. He stated he then instructed Hudgens and

the witness to put the victim in the shower. ROA.85. At some point, Hudgens asked Bostic if he had any methamphetamine on him. ROA.85. Bostic then provided Hudgens with a "two-dollar shard of methamphetamine," which Hudgens placed into the syringe and injected into the victim. ROA.85-86, 192. He stated he has never used methamphetamine in an attempt to reverse an opioid overdose, but nevertheless brought a small amount of methamphetamine to "try and save" the victim. ROA.192. Bostic claimed the victim regained consciousness and began acting normally after the methamphetamine injection so he left the residence. ROA.192. He eventually learned the next day about the victim's death and Hudgens's arrest. ROA.192.

The Tarrant County Medical Examiner's Office in Fort Worth, Texas performed an autopsy upon the victim following her death. ROA.193. Although the medical examiner found methamphetamine and opiates in his toxicology analysis,[4]

---

[4] The toxicology analysis confirmed the presence of several other controlled substances besides heroin and methamphetamine in the victim's system at the time of her death. ROA.140.

ROA.140. 192., he concluded he could not attribute the victim's death to drug use alone. ROA.133, 192. The medical examiner stated:

> he was not able to articulate the required standard under *Burrage vs. United States* to attribute the death to the drug overdose. It's particularly difficult to prove causation in this case as the victim was under treatment for [cardiomegaly][5] and had previously had heart surgery. Additionally, her heart was enlarged to four times its normal size when she died. While it is likely that the drug use contributed to [the victim's] death, her preexisting health conditions prevented the showing of . . . but-for causation.

ROA.86.; *see* ROA.132. (confirming the victim also suffered from pulmonary hypertension).[6] The medical examiner therefore declared the victim's causes of death are (i) "pulmonary

---

[5] The term "cardiomegaly" refers to an enlarged heart. *See* https://www.mayoclinic.org/diseases-conditions/enlarged-heart/symptoms-causes/syc-20355436. (last visited 11-12-19).

[66] Pulmonary hypertension is a type of high blood pressure that affects the arteries in the lungs and the right side of an individual's heart. Some forms of pulmonary hypertension are serious conditions that become progressively worse and are fatal. *See* https://www.mayoclinic.org/diseases-conditions/enlarged-heart/symptoms-causes/syc-20355436. (last visited 11-12-19)

hypertension with cardiomegaly" and/or (ii) "recent methamphetamine and reported heroin use." ROA.133.

### *Appellant Is Indicted for Conspiracy to Possess With the Intent to Distribute Narcotics*

On January 9, 2019, a Federal Grand Jury for the Western District of Texas (Midland Division) returned a two-count Indictment against Hudgens, Bostic, and several others. ROA.29. Count One of the Indictment charged Hudgens with conspiracy to possess with the intent to distribute one kilogram or more of a mixture or substance containing heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), & 846. ROA.29. Count Two charged Hudgens with conspiracy to possess with the intent to distribute a quantity of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), & 846. ROA.29-30. Based on Hudgens's alleged involvement in these crimes, the Court appointed counsel to defend Hudgens against the charged offenses. ROA.13.

### *Appellant Pleads Guilty Without a Plea Agreement*

Before any trial proceedings began, Hudgens notified the Court of his intent to enter a guilty plea to Counts One and Two of the Indictment without the benefit of a plea bargain agreement. ROA.35. Hudgens's case thereafter came before the Honorable Ronald Griffin, United States Magistrate Judge for the Western District of Texas, for a plea hearing on February 15, 2019. ROA.64. Hudgens proceeded to enter a naked plea to Counts One and Two of the Indictment. ROA.94-95. Based on Hudgens's in-court affirmations, Magistrate Judge Griffin issued his Findings of Fact and Recommendation on Hudgens's guilty pleas to the District Court. ROA.38-39. Magistrate Judge Griffin recommended to the District Court that it accept Hudgens's pleas of guilty and adjudge him guilty and sentence him accordingly. ROA.39. With no objections being made to Magistrate Judge Griffin's Findings of Fact and Recommendation, the Honorable David Counts, United States District Judge for the Western District of Texas, adopted the

findings and conclusions of the Magistrate Judge's report and accepted Hudgens's guilty pleas. ROA.40-41.

### *Appellant's Guideline Sentencing Range Is Calculated at 120 to 121-Months Imprisonment*

The Probation Office subsequently prepared a Presentence Investigation Report ("PSR") for purposes of Hudgens's sentencing. ROA.185. The PSR prepared by the Probation Office calculated Hudgens's offense level at 29 and identified Hudgens's criminal history category as II. ROA.194-97. With a total offense level of 29 and a criminal history II, the initial Guidelines range of imprisonment recommended for Hudgens's offenses was 97 to 121 months imprisonment. ROA.201. Because Hudgens's offenses carried a mandatory minimum sentence of 120-months, Hudgens's Guideline range of imprisonment became 120 to 121-months imprisonment. ROA.201.; *see also* U.S.S.G. Ch. 5, Pt. A, Sentencing Table; U.S.S.G. § 5G1.2(b).

At the sentencing hearing, the District Court found the PSR accurate and adopted it without change. ROA.109, 206.

The District Court nevertheless advised the parties it was considering imposing an upward departure sentence from the advisory Guideline sentencing range of 120 to 121 months imprisonment. ROA.101, 110.

Defense counsel urged the District Court to stay within the applicable Guideline range and impose the mandatory minimum 120-month term of imprisonment upon Hudgens. ROA.114-15. Although tragic, defense counsel reminded the District Court that the victim's own actions led to her death. ROA.113-15. Medical professionals previously advised the victim that she had serious heart problems, requiring her to be placed on the heart transplant waiting list. ROA.112. These professionals advised the victim that her continued use of methamphetamine and/or heroin while having such heart problems could lead to her premature demise. ROA.112. Yet, despite this information from her doctors, the victim continued to knowingly ingest heroin and methamphetamine. ROA.114. For example, besides injecting herself with heroin on the night of her death, the victim also smoked methamphetamine two

22

more times that night even after the methamphetamine injection that Hudgens gave her. ROA.112.

Defense counsel advised the Court that 10-year mandatory minimum sentence would provide an adequate deterrence, reflects the seriousness of the offense, promotes respect for the law, and serves as just punishment under the circumstances. ROA.113-15. He further reminded the Court that the prosecution could not prove Hudgens's actions are a "but for" cause of the victim's death. ROA.113-14. As a result, Hudgens could not be prosecuted under § 841(b)(1)(C) or subjected to the enhanced 240-month mandatory minimum term of imprisonment that accompanies such offense. ROA.113. Defense counsel thus urged the Court not to use a departure sentence to get around the fact that the prosecution could not prosecute Hudgens under § 841(b)(1)(C), citing *United States v. Burrage.* ROA.113-15.

In response to defense counsel's argument, the prosecution concurred that "the Court can't punish the defendant for what he wasn't charged with." ROA.118. The

prosecution further confirmed it had "charged this case appropriately given the law." ROA.118. It thus urged the District Court to punish Hudgens for his conduct, providing the narcotics and then "then trying to use those narcotics as a physician would to bring [the victim] out of the heroin overdose." ROA.118-19. The prosecution argued Hudgens "displayed the kind of depravity that's not commonly known to man," as he had a choice early in the evening when things were not going well to call 911 for help. ROA.119. It further argued:

> So Mr. Hudgens should be punished for dealing in narcotics and the punishment should reflect the fact that peoples' lives are damaged. And in this case, a young woman lost her life. And despite her medical condition, despite whatever conduct she may have engaged in, her life was valuable, and the sentence should reflect that.

ROA.120.

***The District Court Enters an Extreme Upward Departure
Sentence of 240-Months Imprisonment[7]***

After listing to the arguments of the parties, the District

Court announced that it "departs from the recommended

sentence choosing to upwardly vary." ROA.121. Although the

District Court acknowledged that Hudgens has a relatively low

criminal history category, the Court declared:

> Pursuant to the Sentencing Reform Act of
> 1984, which I have considered in an
> advisory capacity, and the sentencing
> factors set forth in 18 U.S.C., Section
> 3553(a), which I have considered in
> arriving at a reasonable sentence, I find
> the guideline range in this case to be
> unfair and unreasonable, inappropriate. .
> . .
>
> ***
>
> With respect to Title 18, United States
> Code, Sections 3553(a)(1) and 3553(a)(2),
> the Court does believe that an upward
> variance is appropriate considering the
> nature and circumstances of the offense,
> the need to reflect the seriousness of the
> offense, to afford adequate deterrence to
> criminal conduct, to protect the public

---

[7] The record shows the District Court noted at sentencing it had sentenced
the three other individuals charged in the Indictment to anywhere from
136 months to 235 months imprisonment for their roles in the charged
offenses. ROA.121.

from further crimes of this defendant, and to provide this defendant with needed educational or vocational training, medical care and/or other correctional treatment in the most effective manner.

ROA.121-22.

The Court found that Hudgens conspired with Bostic to possess with intent to distribute a small quantity of methamphetamine and that Hudgens used some of it "in a reckless and senseless manner" when he injected it into the victim while she was overdosing on heroin." ROA.122-23. The District Court condemned Hudgens's behavior:

Mr. Hudgens admitted he believed injecting the meth into [the victim's] nasal cavity would reverse the effects of the heroin. And why wouldn't he think that? We see that on television and movies and it sometimes works. So it's got to be true. . . .

You knew about the heart condition . . . [and] [y]ou knowingly brought heroin to her residence, allowed her to ingest it. Instead of helping her during her intoxication, you recorded a cell phone video as you smacked her in the face with a towel, called her names. . . You were not the person that contacted 911.

***

> The unique circumstances of this offense
> are serious in nature . . . and respect for
> the laws needed in this case. Mr. Hudgens
> was reckless and careless regarding the
> circumstances of [the victim's] intoxication
> and subsequent medical emergency, and a
> sentence above the guidelines appears to
> be . . . would be required and sufficient to
> provide just punishment for the offense.

ROA.123-24.

The District Court thereafter sentenced Hudgens to 240-months imprisonment for each of his offenses, sentences to run concurrently. ROA.124-25. In so doing, the District Court explained how it arrived at its final sentence:

> If the government had been able to charge
> Mr. Hudgens with distribution of
> methamphetamine which resulted in
> death, then we would have had a
> mandatory minimum term of
> imprisonment of 20 years, 240 months,
> along with ten years of supervised release.
> If the guideline were applied with this
> charge, you would have had a total offense
> level of 37, Criminal History Category II,
> base offense level 38 and an additionally
> two points for obstruction of justice
> pursuant to 3C1.1 of the guidelines. So the
> custody term for that calculation would
> have been 235 months to 293 months,

27

much like the analysis I made for Mr.
Bostic.

ROA.124-25. The Court then ordered Hudgens's terms of imprisonment to be followed by concurrent terms of supervised release, particularly five years for Count One and three years as to Count Two. ROA.125. In addition, the Court ordered Hudgens to pay $200 in special assessments. ROA.125.

Hudgens objected to the sentence imposed by the District Court as "both procedurally and substantively unreasonable." ROA.126. Specifically, he argued as follows: (i) his sentence is substantially unreasonable in light of 18 U.S.C. § 3553; (ii) the Court's reasons for departing "don't advance the objectives set forth in 3553(a)(2)"; and (iii) the departure is not justified by the facts of the case. ROA.126. Hudgens further re-urged his prior sentencing objection that an upward departure sentence is nothing more than an end-around *Burrage*. ROA.126. ("I'd also incorporate in this objection the previous argument I made."); *see* ROA.113-15. Hudgens later timely perfected his appeal to

this Honorable Court after the District Court's entry of its judgment. ROA.47.

## SUMMARY OF THE ARGUMENT

An upward departure is not warranted by the facts of Hudgens's case, and certainly not one to the extent selected by the Court. The District Court imposed an upward departure sentence of 120-months imprisonment, which is 100 percent higher than the advisory Guideline ranges deemed applicable by the Court. The District Court effectively treated Hudgens as though he had been convicted of an offense under the enhanced penalty provisions of 21 U.S.C. § 841 even though the prosecution admittedly could not charge Hudgens with such offense. Thus, the District Court's upward departure sentences did not constitute an appropriate application of either its sentencing discretion or the 18 U.S.C. § 3553 factors. Accordingly, Hudgens respectfully request this Court to vacate his sentences and remand his case to the District Court for resentencing.

## **ARGUMENT**

**ISSUE ONE:      THE DISTRICT COURT IMPOSED AN UNREASONABLE UPWARD DEPARTURE SENTENCE UPON APPELLANT.**

The District Court's 240-month prison sentence falls too far outside the bounds of reasonableness to withstand scrutiny on appeal. Although determining the outer boundaries of a sentencing court's discretion is admittedly a judgment call, the District Court strayed too far with regards to Hudgens's sentences. A sentence within the advisory Guideline ranges applicable to Hudgens's offenses would have served as a fair and reasonable sentence and achieved the goals of sentencing. This Court should therefore vacate Hudgens's 240-month terms of imprisonment and remand his case to the District Court for resentencing.

## **A.    The relevant standards of review and applicable law**

### **1.    This Court reviews for harmless error**

Arguments that are properly preserved below, like Hudgens, *see* ROA.126., are reviewed on appeal for harmless error. *United States v. Walters*, 418 F.3d 461, 463 (5th Cir.

2005). Under harmless error review, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a). An error affects substantial rights if it impacts the outcome of the trial proceedings; conversely, an error is harmless if it does not affect the outcome of the district court proceedings. *United States v. Akpan*, 407 F.3d 360, 377 (5th Cir. 2005). A sentencing error will be considered harmless if the Government can establish beyond a reasonable doubt that the district court would have imposed the same sentence absent the error. *United States v. Pineiro*, 410 F.3d 282, 286 (5th Cir. 2005).

## 2. **Substantive reasonableness**

After calculating the Guideline's recommended sentencing range, a sentencing District Court should consider the factors set forth in 18 U.S.C. § 3553(a) to determine the particular sentence to impose. *See United States v. Smith*, 417 F.3d 483, 490 (5th Cir. 2005) (indicating the Court will determine whether a sentence is unreasonable with regard to § 3553(a)). 18 U.S.C.

§ 3553(a) provides, in part, the court, in determining the particular sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . .

(5) any pertinent policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar

32

>  records who have been found guilty of
>  similar conduct; and
>
> (7)  the need to provide restitution to any
>      victims of the offense.

18 U.S.C. § 3553(a)

This Court reviews sentences for reasonableness in light of the factors set out in 18 U.S.C. § 3553(a), employing an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 50–51 (2007); *see United States v. Saldana*, 427 F.3d 298, 308 (5th Cir. 2005) (stating this Court reviews upward departures for reasonableness, which necessitates that the Court review "the district court's decision to depart upwardly and the extent of that departure for abuse of discretion."). The Court's review is bifurcated; it looks first to whether the district court committed procedural error and, if not, to whether the sentence was reasonable. *United States v. Williams*, 517 F.3d 801, 808 (5th Cir. 2008). A sentencing court does not abuse its discretion in deciding to depart upwardly when its reasons for doing so: (1) advance the objectives set forth in § 3553(a)(2); (2) is authorized by § 3553(b); and (3) are justified by the facts of the case. *United*

*States v. Rajwani*, 476 F.3d 243, 249-50 (5th Cir. 2007). This Court reviews a district court's interpretation of the Guidelines *de novo*, *United States v. Velez–Alderete*, 569 F.3d 541, 543 (5th Cir. 2009), and its factual findings for clear error. *United States v. Fernandez*, 770 F.3d 340, 342 (5th Cir. 2014).

**B.    United States v. Burrage precluded the prosecution from charging Appellant under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C)**

In *United States v. Burrage*, the deceased overdosed on a combination of drugs, including one gram of heroin purchased from the defendant. 571 U.S. 204, 207 (2014). Two medical experts testified at trial. *Id.* One of them, a forensic toxicologist, determined that multiple drugs were present in the deceased's system at the time of death. *Id.* However, he could not say whether the deceased "would have lived had he not taken the heroin." *Id.* The other medical expert came to a similar conclusion and "could not say whether [the deceased] would have lived had he not taken the heroin, but observed that [his] death would have been very less likely." *Id.* The trial court instructed the jury that the government must prove "that the

34

heroin distributed by the Defendant was a contributing cause of ... death." *Id.* at 208.

After noting that the sentencing enhancement at issue represented an element that must be submitted to a jury and found beyond a reasonable doubt, the Court narrowed the issue to "whether the use of heroin was the actual cause of [the decedent's] death in the sense that § 841(b)(1)(C) requires." *Id.* at 210. The Court then offered the following analysis:

> The law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause. H. Hart & A. Honore, Causation in the Law 104 (1959). When a crime requires "not merely conduct but also a specified result of conduct," a defendant generally may not be convicted unless his conduct is "both (1) the actual cause, and (2) the 'legal' cause (often called the 'proximate cause') of the result." 1 W. LaFave, Substantive Criminal Law § 6.4(a), pp. 464–466 (2d ed. 2003) (hereinafter LaFave); *see also* ALI, Model Penal Code § 2.03, p. 25 (1985). Those two categories roughly coincide with the two questions on which we granted certiorari. We find it necessary to decide only the first: whether the use of heroin was the actual cause of ... death in the sense that § 841(b)(1)(C) requires. . . .

"[W]here A shoots B, who is hit and dies, we can say that A [actually] caused B's death, since but for A's conduct B would not have died." LaFave 467–468 (italics omitted). The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back. Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived.

This but-for requirement is part of the common understanding of cause. Consider a baseball game in which the visiting team's leadoff batter hits a home run in the top of the first inning. If the visiting team goes on to win by a score of 1 to 0, every person competent in the English language and familiar with the American pastime would agree that the victory resulted from the home run. This is so because it is natural to say that one event is the outcome or consequence of another when the former would not have occurred but for the latter. It is beside the point that the victory also resulted from a host of other necessary causes, such as skillful pitching, the coach's decision to put the leadoff batter in the lineup, and the league's decision to schedule the game.

> By contrast, it makes little sense to say that an event resulted from or was the outcome of some earlier action if the action merely played a nonessential contributing role in producing the event. If the visiting team wound up winning 5 to 2 rather than 1 to 0, one would be surprised to read in the sports page that the victory resulted from the leadoff batter's early, non-dispositive home run.
>
> Where there is no textual or contextual indication to the contrary, courts regularly read phrases like "results from" to require but-for causality.

*Burrage*, 571 U.S. at 210-12.

After examining the text of the enhancement, the Court reached the following conclusion:

> We hold that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury.

*Id.* at 218.

It its beyond dispute that Hudgens was not convicted of causing the victim's death in the case at bar. The reason being,

as correctly noted by the prosecution below, the prosecution could not establish the requisite causation beyond a reasonable doubt as required under *Burrage*. *Id.* at 210 ("Because the 'death results' enhancement increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."). Here, the medical examiner expressly affirmed that:

> he was not able to articulate the required standard under *Burrage vs. United States* to attribute the death to the drug overdose. It's particularly difficult to prove causation in this case as the victim was under treatment for [cardiomegaly][8] and had previously had heart surgery. Additionally, her heart was enlarged to four times its normal size when she died. While it is likely that the drug use contributed to [the victim's] death, her preexisting health conditions prevented the showing of . . . but-for causation.

---

[8] The term "cardiomegaly" refers to an enlarged heart. *See* https://www.mayoclinic.org/diseases-conditions/enlarged-heart/symptoms-causes/syc-20355436. (last visited 11-9-19).

ROA.86.; *see* ROA.132-33. Thus, the victim's death is not part of Hudgens's conviction and a jury could not have made a "death results" finding had the prosecution charged Hudgens under § 841(b)(1)(C).

**C.    The District Court abused its discretion in its decision to depart upwardly and as to the extent of its departure**

This Court has stated that when a district court imposes a non-Guideline sentence, it pays "particular attention to the specific reasons given for deviating from the Guidelines." *United States v. Sanchez-Ramirez*, 497 F.3d 531, 534 (5th Cir. 2007). "The farther a sentence varies from the applicable Guideline sentence, the more compelling the justification based on factors in section 3553(a) must be." *Id.* at 534-35. Moreover, a "non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." Id. at 535. A factor already accounted for in the advisory Guideline

range is an improper factor to consider for a non-Guideline sentence. *Id.* (noting the purpose of such rule is to avoid double-counting).

### 1. **The lower Court made an improper end-around** *Burrage*

Whenever the extent of an increase is assessed for reasonableness, it seems evident that the starting and end points for the sentencing court's analysis must be considered. In this case, for example, Hudgens started at a total offense level of 29 but ended at 37—an increase of eight levels. This increase, in turn, raised the floor for Hudgens's sentence 120-months, which is 100 percent of the original advisory Guideline range deemed applicable by the Court. Transcending these numbers in this case, however, is the blunt fact that the effect of the District Court's departure and the resulting sentence was to treat Hudgens as though he had been convicted of an offense under the enhanced penalty provisions of 21 U.S.C. § 841. *See* 21 U.S.C. § 841(b)(1)(C) (providing for that a defendant shall be

sentenced to a term of not less than 20 years' imprisonment, or more than life, if death results from the defendant's conduct).

Although the District Court acknowledged its familiarity with the principles espoused in *Burrage* and declared that *Burrage* is distinguishable from the present matter, ROA.124., it effectively made an end-around *Burrage* and ultimately treated Hudgens as though his conviction is for a death results offense. The rationale behind the District Court's final sentencing range confirms the Court's misguided sentencing analysis:

> If the government had been able to charge Mr. Hudgens with distribution of methamphetamine which resulted in death, then we would have had a mandatory minimum term of imprisonment of 20 years, 240 months, along with ten years of supervised release. If the guideline were applied with this charge, you would have had a total offense level of 37, Criminal History Category II, base offense level 38 and an additionally two points for obstruction of justice pursuant to 3C1.1 of the guidelines. So the custody term for that calculation would have been 235 months to 293 months, much like the analysis I made for Mr. Bostic.

> The defendant is placed in the custody of the United States Bureau of Prisons to serve a term of imprisonment of 240 months.

ROA.124-25.

The District Court understood that the prosecution could not charge Hudgens with a death results offense in light of *Burrage* yet nonetheless chose to rely upon the Guideline range for such an offense to determine Hudgens's ultimate sentence. *See* ROA.124-25.; *see also* U.S.S.G. § 2D1.1 (establishing a base offense level 38 applies "if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance"). The lower court's approach not only undermined the broad discretion entrusted to prosecutors to determine what charges to bring against a criminal defendant, *see Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), it deprived Hudgens of his constitutional right to due process. *See Ex parte Milligan*, 71 U.S. 2, 119 (1866) (stating "it is the

birthright of every American citizen when charged with crime, to be tried and punished according to law").

Not only that, the lower court's approach at sentencing amounts to an improper substitution of its own individual judgment for the controlling decisions of the Supreme Court. *See United States v. Payner*, 447 U.S. 727, 737 (1980) (affirming that district courts may not substitute their own individual judgments for the controlling decisions of the Court). The District Court abused its discretion in doing what neither the prosecution nor the jury had any right to do — hold Hudgens accountable for a death results offense. The weight the District Court placed on the Guideline range that would have applied if the prosecution had been able to charge Hudgens with the distribution of a controlled substance that resulted in death constitutes a clear error of judgment. Because this error had an extremely disproportionate effect on Hudgens's sentencing, this Court should vacate Hudgens's sentences and remand his case for resentencing.

## 2. <u>The degree of the lower Court's departure is unjustified</u>

It is neither unusual nor extraordinary for individuals ingesting heroin to overdose. For example, in 2015, 81,326 emergency department visits occurred for unintentional, heroin-related poisonings in America, which is an estimated rate of almost 26 per 100,000 people. *See* https://www.cdc.gov/drugoverdose/data/heroin.html (last visited 11-12-19) (citing Centers for Disease Control and Prevention, 2018 Annual Surveillance Report of Drug-Related Risks and Outcomes (2018)). Mandatory minimum sentences are thus "reserved for high volume trafficking of the eight substances thought most susceptible to abuse and least appropriate for medicinal use without tight controls and that are assigned to Controlled Substance Schedules I and II." Charles Doyle, *Mandatory Minimum Sentencing of Federal Drug Offenses in Short*, at 4, (January 11, 2018).[9] The eight substances include <u>heroin</u>, powder cocaine, cocaine base

---

[9](https://www.google.com/search?client=firefox-b-1-d&q=Mandatory+Minimum+Sentencing+of+Federal+Drug+Offenses+in+Short (last visited 11-12-19).

(crack), PCP, LSD, fentanyl, <u>methamphetamine</u>, and marijuana. *Id.* (emphasis added). Because Hudgens's sentencing was ultimately impacted by mandatory minimum sentencing, it appears that much of his conduct and the effect of that conduct on the victim was already taken into account in calculating the Guideline range applicable to his offenses. *United States v. Rajwani*, 476 F.3d 243, 251 (5th Cir. 2007) ("The applicable sentencing range already incorporates the aggravating circumstances of this offense to some degree and that sentencing determination, pursuant to 18 U.S.C. § 3553(a)(4), is entitled to due consideration under *Booker.*").

The circumstances of this case are simply not so compelling as to justify the imposition of a prison sentence twice that recommended by the Guidelines. There is no doubt that Hudgens acted negligently and failed to exercise good judgment in connection with the victim's overdose. Nevertheless, the circumstances and character of Hudgens's behavior do not justify a sentence so far outside the Guidelines range as his case is not "so extraordinary as to eviscerate the Guidelines of all

applicability." *See United States v. Harris*, 293 F.3d 863, 880 (5th Cir. 2002).

The District Court entirely ignored the victim's own choices that contributed to her demise. The record establishes the victim voluntarily ingested dangerous street drugs, ignoring the known risks they posed and the special dangers they posed to her failing heart. ROA.112. (reflecting medical professionals advised the victim that her continued use of methamphetamine and/or heroin in connection with her heart problems could lead to her premature demise). A departure of twice that recommended by the Guidelines should take into account all circumstances related to the offense, including the knowing risks entered by the victim. *See generally Harris*, 293 F.3d at 880 (indicating the sentencing court had discretion to consider the victim's actions in relation to its decision to make a downward departure from the recommended Guideline range).

As for the Court's reliance on Hudgens's insensitive reactions and failure to secure the victim timely medical attention, ROA.123-24., such reasons do not justify a more

severe sentence. A bystander generally has no duty to provide affirmative aid to an injured person even if the bystander has the ability to help. *See W. Page Keeton et al.*, Prosser and Keeton on the Law of Torts § 56, at 375 (5th ed. 1984); *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1178 (3d Cir. 1994). Consequently, punishing Hudgens for his negligence and failing to act constitutes a legally unacceptable reason to support such an extreme upward departure. *See United States v. Desselle*, 450 F.3d 179, 182 (5th Cir. 2006) ("A district court abuses its discretion if it departs on the basis of legally unacceptable reasons or if the degree of the departure is unreasonable."). The District Court therefore abused its discretion in this instance because the degree of its departure and its sentence, as a whole, are unreasonable. This Court should therefore vacate Hudgens's sentences and remand his case for resentencing.

## CONCLUSION

Based on the foregoing, this Court should conclude the District Court exceeded the bounds of reasonableness when it imposed unreasonable upward departure sentences of 240-

months upon Hudgens. Hudgens, therefore, respectfully requests this Court to vacate his sentences and to remand his case for resentencing.

Respectfully submitted,

KELLER STOLARCZYK PLLC
234 W. Bandera Rd., No. 120
Boerne, Texas 78006
Tele: 830.981.5000
Facs:888.293.8580

***/s/ Shane Stolarczyk***
Shane Stolarczyk

## **CERTIFICATE OF SERVICE**

I, Shane Stolarczyk, certify that today, November 12, 2019, a copy of Appellant's Brief and Record Excerpts were served, via this Court's e-filing system, on opposing counsel. I also certify that a hard copy of Appellant's Brief & Record Excerpts have been served on the defendant-appellant at the following address: Braxton Hudgens, No. 19799-480, Ector County Detention Center, P.O. Box 331, Odessa, TX 79760.


*/s/ Shane Stolarczyk*
Shane Stolarczyk

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies as follows:

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,351 words printed in a proportionally spaced typeface.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it is printed in a proportionally spaced, serif typeface using Bookman Old Style 14-point font in text and Bookman Old Style 12-point font in footnotes.

3. This brief complies with the privacy redaction requirements of 5th Circuit Rule 25.2.13.

4. This brief complies with 5th Circuit Rule 25.2.1 because it is an exact copy of the electronic submission.

5. This brief is free of viruses because it has been scanned for viruses with the most recent version of a commercial virus scanning program.

*/s/ Shane Stolarczyk*
Shane Stolarczyk